FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAR 10 2010
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CAF DOWLAH,

                    Plaintiff,

— against —

BILKIS S. DOWLAH, SUSAN GERNER
NAFTHALI G. BERRILL,
EDWINA RICHARDSON,

                    Defendants.
----------------------------------------------------------------X

**MEMORANDUM and ORDER**

09-CV-2020 (SLT)(LB)

**TOWNES, United States District Judge:**

This suit stems from long and contentious proceedings in the Family Court of Queens County, New York ("Family Court"). On May 12, 2009, Caf Dowlah ("Plaintiff"), appearing *pro se*, commenced this action against four defendants involved in a protracted child custody dispute over Plaintiff's two minor sons. In this suit, Plaintiff has named Bilkis S. Dowlah, his estranged wife, Susan Gerner, the court-appointed law guardian for Plaintiff's children, Naftali G. Berrill, incorrectly s/h/a Nafthali G. Berrill, the court-appointed forensic evaluator, and the Honorable Edwina Richardson, Supervising Judge ("Judge Richardson") of the Family Court. Plaintiff's asserts claims under 42 U.S.C. §§ 1983 and 1985, alleging violations of the Fourth and Fourteenth Amendments, and claims under state statutory and common law.

On May 28, 2009, the Court *sua sponte* dismissed Judge Richardson from this action based on the doctrine of judicial immunity. *See* Docket # 4, Order of Partial Dismissal (May 28, 2009). On August 12, 2009 and November 16, 2009, defendants Berrill and Gerner, respectively, moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In a letter dated November 15, 2009, defendant Dowlah, proceeding *pro se*, requested that Plaintiff's action against her be denied in its entirety as it is "merely repetitive motion

1

practice designed to harass me and cause me to incur unnecessary [costs]." *See* Docket # 15, Bilkis Dowlah Letter to Court (Nov. 15, 2009).

For the following reasons, the Court dismisses the Complaint in its entirety against all Defendants.

## DISCUSSION

**I.      Standards of Review**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when there is a "lack of subject matter jurisdiction" by the federal court and Rule 12(b)(6) provides for dismissal of a claim for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003), with the exception that the party invoking the jurisdiction of the Court has the burden of proof in a 12(b)(1) motion, in contrast to a 12(b)(6) motion, in which the defendant has the burden of proof, *id.* (citing *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994)).

When ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569. If a party does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Nonetheless, "[a] document

filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest.") (internal quotations marks and citations omitted).

"Materials *de hors* the complaint are generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). Thus, at this stage of the litigation, courts consider only the pleadings and "documents attached to the complaint as exhibits or incorporated in the complaint by reference, . . . [as well as] matters of which judicial notice may be taken under Fed. R. Evid. 201." *Piccolo v. N.Y. City Campaign Fin. Bd.*, No. 05-CV-7040, 2007 WL 2844939, at *2 (S.D.N.Y. Sept. 28, 2007) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).

## II.     *Rooker-Feldman* Doctrine

Defendants Berrill and Gerner both argue that Plaintiff's action must be dismissed based on the *Rooker-Feldman* doctrine. Indeed, "[w]here a federal suit follows a state suit, the former may be prohibited by the so-called *Rooker-Feldman* doctrine in certain circumstances." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005) (citing 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4469.1 (2002)). "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court

may review state-court decisions." *Id.* at 85. The Supreme Court has recently reined in the use of the doctrine, cautioning that it was meant to occupy a "narrow ground." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The Court held that *Rooker-Feldman* "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*

In the wake of *Exxon Mobil*, the Second Circuit revisited its prior precedents and limited the application of *Rooker-Feldman* to cases satisfying four "requirements":

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"--i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (alterations in original) (quoting *Exxon Mobil*, 544 U.S. at 284). The first and fourth requirements are procedural, while the second and third are substantive. *Id.*

Here, the *Rooker-Feldman* doctrine does not bar Plaintiff's claims because Plaintiff does not "invite district court review and rejection" of a state court judgment. *Id.* The doctrine only applies when "the requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment." *McNamara v. Kaye*, No. 08-4561-cv, 2009 WL 3377914, at *1 (2d Cir. Oct. 20, 2009) (citing *Hoblock*, 422 F.3d at 85). In *McNamara*, the Second Circuit further added, in *dicta,* that a plaintiff's claims, insomuch as they challenge only "the procedures applied in all attorney disciplinary proceedings and seek damages and prospective relief rather than a modification of [the plaintiff's] suspension or reinstatement orders," would not be barred by *Rooker-Feldman*. 2009 WL 3377914, at *1.

In the child custody context, in order to satisfy this substantive requirement, a plaintiff must be "plainly" seeking to "repair[] to federal court to undo the [Family Court] judgment." *Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009) (quoting *Exxon Mobil*, 544 U.S. at 293). In *Green*, the Second Circuit held that *Rooker-Feldman* did not apply to a plaintiff's challenge of a temporary custody award that was later reversed by the Family Court itself. *Id.* The Second Circuit reasoned that, since the child had already been returned to the plaintiff by the Family Court, no state-court "judgment" remained to be undone by federal courts. *Id.* Thus, the Court reads *McNamara* and *Green* to suggest that plaintiff claims seeking only monetary damages or prospective-only relief against court procedures rather than modification of a family court's temporary custody or other orders would not run afoul of the *Rooker-Feldman* doctrine.

In this case, Judge Richardson granted a final order of custody to Bilkis Dowlah over Plaintiff's two children. Nevertheless, Plaintiff maintains that he does not seek to undo any Family Court decision. While he complains that the Family Court decision was fraudulent, his Complaint only requests to hold Defendants "liable for conspiring" against him and "such other and further relief as this Court seems just and proper." Compl. § IV, ¶¶ A.-D. His motion papers further illuminate his Complaint. In his opposition to defendant Gerner's motion, Plaintiff implores this Court (1) to revoke Gerner's license to practice law, (2) to sentence Gerner to an appropriate period of imprisonment, and (3) to award Plaintiff and his children appropriate financial compensation, namely at least one million dollars for each charge. Pl.'s Aff. Opp. Gerner ¶ 54. In his opposition to defendant Berrill's motion, Plaintiff entreats the Court to grant him "financial penalties" for Berrill's "crimes and offenses" and award Berrill "appropriate jail sentences." Pl.'s Aff. Opp. Berrill 18.

Although the Court plainly has no authority to incarcerate defendants in a civil dispute, the Court construes Plaintiff's requests as seeking only monetary damages and prospective injunctive relief. Consequently, the Court follows the Second Circuit's reasoning in *McNamara* and *Green* and finds that *Rooker-Feldman* does not apply to Plaintiff's claims that only seek monetary damages or prospective injunctive relief and do not seek to overturn a child custody award. *See also Pittman v. Cuyahoga County Dep't of Children and Family Servs.*, No. 06-3312, 2007 WL 2050840, at *3 (6th Cir. July 16, 2007) (holding that *Rooker-Feldman* does not bar plaintiff claims that do not focus on the outcome of state court custody proceedings or otherwise request reversal of a juvenile court decision).

### III.    Domestic Relations Exception

Defendants Berrill and Gerner also assert that this Court's jurisdiction is barred by the domestic relations exception, which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). At the heart of the domestic relations exception lies federal-court recognition that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Puletti v. Patel*, No. 05-cv-2293, 2006 U.S. Dist. LEXIS 51597, at *14 (E.D.N.Y. July 14, 2006) (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)). Indeed, it is well settled that federal courts generally do not have jurisdiction over such matters based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. New York City*, 814 F.Supp. 1139, 1146 (E.D.N.Y. 1993).

Under the domestic relations exception, "[f]ederal courts have discretion to abstain from exercising jurisdiction over issues on the verge of being matrimonial in nature as long as full and fair adjudication is available in state courts." *Fischer v. Clark*, No. 08-CV-3807, 2009 WL 3063313, at *2 (E.D.N.Y. Sept. 24, 2009) (internal quotation marks omitted). While the exception finds its origin in an interpretation of the federal courts' diversity jurisdiction, it also has been applied to federal question jurisdiction, "includ[ing] civil rights actions directed at challenging the results of domestic relations proceedings." *Fischer*, 2009 WL 3063313, at *2 (quoting *Mitchell-Angel v. Cronin*, No. 95-CV-7937, 1996 WL 107300 LEXIS 4416, at *5 (2d Cir. Mar. 8, 1996)).

The exception, however, is still "very narrow." *Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995). "[It does not] strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree . . . or a child custody decree." *Id.* (quoting *Ankenbrandt*, 504 U.S. at 701-02). In *Ankenbrandt*, the Court held the exception inapplicable to a former wife's state-law tort claims against her ex-husband who had allegedly committed child abuse after the two were granted a divorce because the suit only sought monetary damages. 504 U.S. at 704. Accordingly, claims solely seeking monetary relief will rarely invoke the domestic relations exception. *See King v. Commissioner*, No. 00-9234, 2003 WL 1343011, at *2 (2d Cir. Mar. 19, 2003) (holding that the domestic relations exception is irrelevant where the plaintiff seeks monetary damages and is not seeking a domestic relations award or asking that his parental rights be reinstated); *Ellis v. Little Flower Children's Servs.*, No. CV 99-0503, 2000 WL 516887, at *4 (E.D.N.Y. Mar. 1, 2000) ("If what a plaintiff seeks is an award of damages for the

7

unconstitutional enforcement of a custody order, a federal court may entertain the claim.") (citing *Hurlman v. Rice*, 927 F.2d 74, 79 (2d Cir. 1991)).

Nevertheless, the Second Circuit has recently departed from this general rule where the claims "begin and end in a domestic dispute." *Schottel v. Kutyba*, No. 06-1577-cv, 2009 U.S. App. LEXIS 1916, at *3-4 (2d Cir. Feb. 2, 2009). In *Schottel*, the plaintiff alleged fraud and coercion in divorce proceedings that deprived her of custody and visitation rights and caused her emotional distress. *Id.* at *3. Specifically, the complaint in *Schottel* alleged that the defendants (1) fraudulently misrepresented to the court material facts in order to file divorce proceedings in New York; (2) forged plaintiff's signature on documents relating to the divorce proceeding; and (3) coerced plaintiff into signing divorce-related documents. *Id.* at *2-*3. In a proposed amended complaint, the plaintiff only sought monetary damages for the claims. *Id.* at *3. The Second Circuit construed the tort claims, even though only for monetary damages, as "at heart, a dispute surrounding the custody of [the plaintiff's] child." *Id.* at *2. Unlike the case in *Ankenbrandt*, where the tort claims arose after the status of familial relationship was already determined by state law and thus had no bearing on the child abuse claims, the Second Circuit found *Schottel*'s tort claims "[in]distinct from the domestic relationship," involving the "dissolution of marriage—an area at the core of the domestic relations exception." *Id.* at *3. The Second Circuit reasoned that "a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." *Id.* at *4. Thus, under recent Second Circuit precedent, this Court may be deprived of jurisdiction over claims that "begin and end in a domestic dispute," even if the plaintiff is seeking only monetary damages.[1]

---

[1] While *Schottel* involved a diversity case, the Court sees no reason why its rationale should not apply to federal question cases as found in *Fischer*, 2009 WL 3063313, and *Mitchell-Angel*, 1996 WL 107300 LEXIS 4416.

8

A review of the Complaint reveals that Plaintiff asserts nothing more than a garden-variety domestic dispute disguised as a federal civil rights action. First, he accuses defendant Bilkis Dowlah of giving "false testimony" and "manufactured and falsified evidence" to the Family Court, coaching and coercing the Dowlah children to lie in Family Court, and filing false Family Court cases. Compl. § III.A. Second, he alleges that defendant Gerner "fraudulently misrepresented" the children, aided and abetted defendant Dowlah in violating court orders, and obstructed the counseling of the children. *Id.* § III.B. Third, he avers that defendant Berrill submitted a negligent and fraudulent report, gave false testimony to the Family Court, made false claims and falsified the results of his forensic exams. *Id.* § III.C. Fourth, he claims that defendant Judge Richardson "staged a mockery of justice and conducted the proceedings in a perfectly farcical manner," "aided and enticed the other Defendants to resort to lies," and "obstructed justice." *Id.* § III.D. Plaintiff also accuses all Defendants of endangering the welfare of his children, seemingly based on their role in the Family Court's award of custody to Bilkis Dowlah. *See* Compl. §§ III; Pl. Aff. ¶¶ 28-29, 42-44, 76. Finally, he maintains that all the Defendants denied him due process of law, caused intentional infliction of emotional distress and interfered with Plaintiff's custodial and familial rights. Compl. § IV.A-D.

Like *Schottel*, the gravamen of Plaintiff's complaint is the dissolution of a marriage – "an area at the core of the domestic relationships exception." 2009 U.S. App. LEXIS 1916, at *2. Like *Schottel*, Plaintiff asserts fraud and coercion which resulted in the loss of his custodial rights and emotional distress. *See id.* at *3. Indeed, Plaintiff's factual allegations nearly mimic the accusations dismissed by the Second Circuit in *Schottel*. Moreover, Plaintiff's claims arose prior to the state's final determination of his familial status. Thus, unlike *Ankenbrandt*, Plaintiff is not alleging tortious conduct outside of the child custody dispute. Nor is he seeking a

9

determination of whether the proceedings before the Family Court comports with due process. *Cf. Thomas v. New York City*, 814 F.Supp. 1139, 1146-47 (E.D.N.Y. 1993) (finding that the domestic relationship exception does not apply to plaintiff's challenge to the constitutionality of the state's procedures used to separate a parent from a child).[2] Even viewed in the light most favorable to Plaintiff, his Complaint cannot be plausibly read to allege anything more than claims which "begin and end in a domestic dispute." *Id.* Since Plaintiff's claims are indistinct from his domestic qualms, the Court is divested of jurisdiction over Plaintiff's action under the domestic relations exception.

Even though defendant Bilkis Dowlah has not formally filed a motion to dismiss, the Court discharges the Complaint against her under the Court's authority to *sua sponte* dismiss for lack of subject matter jurisdiction. Under the Federal Rules, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *accord Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("If a court perceives at any state of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action."). The Court notes that Plaintiff had a fair opportunity to respond to the jurisdictional defects in this action in his opposition papers to both defendants Berrill's and Gerner's motions to dismiss and thus dismissal as to defendant Dowlah would not be unfair.

Accordingly, having found that the domestic relations exception precludes jurisdiction over Plaintiff's claims, the Court dismisses Plaintiff's Complaint in its entirety against all Defendants.

---

[2] Plaintiff apparently accuses Judge Richardson of "sexual discrimination, violation of equal protection of the laws, and the due process of law by a state-sponsored and funded organization." Pl.'s Aff. ¶ 85. Nevertheless, these charges are nothing more than naked assertions devoid of factual support. Accordingly, they are "legal conclusions[] . . . supported by mere conclusory statements" and are not entitled to the assumption of truth. *Iqbal*, 129 S.Ct. at 1949.

## IV. Berrill and Gerner's Quasi-Judicial Immunity

Even if this Court had jurisdiction over Plaintiff's claims, defendants Berrill and Gerner would be dismissed from the action under the doctrine of quasi-judicial immunity. "A private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is functionally comparable to that of a judge, . . . or if the private actor's acts are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004) (internal citations and quotation marks omitted). This quasi-judicial immunity applies to federal claims in federal court. *See Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009).

Absolute immunity may attach to non-judicial officers and employees where the individual serves as an "arm of the court," *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) (quoting *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987)), or where the individual conducts "activities that are inexorably connected with the execution of [court] procedures and are analogous to judicial action," *id.* (quoting *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996)). Nevertheless, "[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach." *Id.* (quoting *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990)). Thus, immunity will not attach where an individual acted under her own initiative rather than "at the initiative of the court." *Id.*; *see also Snell*, 920 F.2d at 692 n.18 (only qualified immunity will apply when actions are "farther removed from the judicial process and are not initiated by courts").

As a court-appointed forensic evaluator, Berrill acted as an "arm of the court" at the court's initiative. In *Hughes v. Long*, the Third Circuit held that court-appointed evaluators in a child custody proceeding enjoyed judicial immunity from federal civil rights liability as "a non

11

judicial person who fulfills a quasi-judicial role at the court's request." 242 F.3d 121, 126 (3d Cir. 2001). The Third Circuit explained that the court-appointed evaluators in that case had interviewed all relevant parties, administered tests and sent the parties for psychological testing, and made a recommendation regarding a custody arrangement to the court. *Id.* In essence, the evaluator's function was to engage in neutral fact-finding and advise the court. *Id.* at 127. In granting immunity, the Third Circuit found these functions "intimately related and essential to the judicial process because they aid and inform the court in its discretionary duties." *Id.*

In this case, Berrill performed similar functions, including interviewing and consulting with Plaintiff, Plaintiff's wife, and Plaintiff's children, examining the parties to the custody proceedings, administering psychological tests and evaluations, testifying before the Family Court, and making a report containing recommendations to the Family Court. For these reasons, the Court finds Berrill immune from Plaintiff's civil rights action. *Cf. Faraldo v. Kessler*, No. 08-CV-261, 2008 U.S. Dist. LEXIS 5367, at *12 (E.D.N.Y. Jan. 23, 2008) (granting absolute immunity to court-appointed evaluator in a guardianship proceeding).

Additionally, as a court-appointed law guardian, *see* N.Y. Fam. Ct. Act §§ 241, 249, Gerner is also protected by absolute immunity. The Second Circuit recently applied the common law quasi-judicial immunity to preclude § 1983 liability of a law guardian in a litigant's action arising out of family court proceedings. *See Yapi v. Kondratyeva* No. 07-4800-cv, 2009 WL 2030359, at *1 (2d Cir. July 10, 2009) (citing *Bluntt v. O'Connor*, 737 N.Y.S.2d 471 (N.Y. App. Div. 2002); *Bradt v. White*, 740 N.Y.S.2d 777 (N.Y. Sup. Ct. Greene Cty. 2002)). *See also Gardner by Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) (guardian *ad litem* receive absolute immunity in acting as an "actual functionary or arm of the court"); *Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989) (guardian *ad litem* and conservator appointed by family court judge

"were involved in the adjudicative process and shared in the family court judge's absolute immunity"); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984) (guardian *ad litem* was absolutely immune from suit since the guardian "must act in the best interests of the child he represents. This position clearly places him squarely within the judicial process to accomplish that goal."); *Lewittes v. Lobis*, No. 04 Civ.0155, 2004 WL 1854082, at *12 (S.D.N.Y. Aug. 19, 2004) (applying New York's quasi-judicial immunity to law guardians in a § 1983 action).

Here, in advocating on behalf of the best interest of Plaintiff's young children, defendant Gerner provided a crucial service to the Family Court and is thus protected from suit as an "arm of the court."

Consequently, assuming the Court had subject matter jurisdiction over Plaintiff's claims, defendants Berrill and Gerner would still be dismissed from the action based on quasi-judicial immunity.

## VII. Failure to State Claim

Even if the Court were to reach the merits of Plaintiff's claims, the causes of action against defendants Gerner and Berrill would be dismissed in their entirety.

### a. 42 U.S.C. § 1983

Section § 1983 protects against the deprivation of constitutional rights by state actors. *Assoko v. City of New York*, 539 F. Supp. 2d 728, 734 (S.D.N.Y. 2008). To establish a constitutional violation under § 1983, a plaintiff must show that: (1) the defendant acted under color of state law; and (2) the defendant's actions resulted in a deprivation of plaintiff's constitutional rights. *Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004). "Private parties are generally not amenable to suit under § 1983, because they are not state actors, although they may be liable where 'there is a sufficiently close nexus between the State

and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the State itself,' . . . or where they are 'jointly engaged with state officials' in a conspiracy to deprive the plaintiff of his constitutional rights[.]" *Bhatia v. Yale School of Medicine*, No. 07-5310-cv, 2009 WL 3109884, at *1 (2d Cir. Sept. 30, 2009) (internal citations omitted). "[A] court appointment of a private individual is not sufficient to establish state action" under Second Circuit case law. *Duboys ex rel. Duboys v. Bomba*, 199 F. Supp. 2d 166, 170 (S.D.N.Y. 2002). *Cf. Housand v. Heiman*, 594 F.2d 923 (2d Cir. 1979) (court-appointed attorneys are not state actors); *Forde v. Mellor*, No. 90 CV. 4144, 1990 WL 270789 (E.D.N.Y. Dec. 10, 1990) (same); *see also Elmasri v. England*, 111 F. Supp. 2d 212 (E.D.N.Y. 2000) (court-appointed guardian and psychologist are not state actors for purposes of § 1983).

Plaintiff's § 1983 claim appears to allege that defendants Berrill and Gerner acted under color of state law by conspiring with the Family Court to deprive Plaintiff of his custodial rights. Nevertheless, Plaintiff asserts no factual basis for his conclusory conspiracy claim. Aside from bald assertions and conclusory allegations of a "conspiracy" among the Defendants to deprive him of rights, the Court could not unearth any specific allegation supporting a "close nexus" or "joint engagement" with the Family Court to sustain a § 1983 claim. Nothing indicates an unlawful agreement or understanding between either Defendant and Judge Richardson or other Family Court officers to form a conspiracy. Accordingly, Plaintiff's § 1983 claims against the defendants Berrill and Gerner are hereby dismissed.

### b. 42 U.S.C. § 1985

Section 1985 permits the recovery of damages against persons who conspire to violate a plaintiff's civil rights. *DeLong v. Soufiane*, No. 05-CV-5529, 2010 WL 234781, at *6 (E.D.N.Y. Jan. 14, 2010). To state a claim under § 1985, a plaintiff must allege: (1) a conspiracy; (2) an

intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an injury to a person, including injury to property, person, or constitutional right. *Bhatia*, 2009 WL 3109884, at *1 (citing *Mian*, 7 F.3d at 1087). A § 1985 "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). Here, Plaintiff fails to allege any factual support to establish that either Defendant was motivated by "racial or . . . otherwise class-based" discriminatory animus. For these reasons, Plaintiff's § 1985 claims against defendants Berrill and Gerner are hereby dismissed.

## CONCLUSION

For the foregoing reasons, all claims against all Defendants are dismissed with prejudice. Plaintiff's complaint is hereby dismissed in its entirety and the Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
March 7, 2010

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge